## Downing & Co. *v.* United States (No. 2144).[1]

1. "Entered Value."
    The "entered value" of paragraph I, Section III, tariff act of 1913, signifies the unit of value and not the gross dutiable valuation given in the entry.

2. Weights, Invoice and True.
    It has been held repeatedly that the true weight of imported goods must be taken as the basis of duties, irrespective of the weights given in the invoice.

3. Weight of Mercerized Yarn.
    Bales of cotton yarn were purchased abroad by importers and mercerized abroad at their order. They were invoiced at the weights before being mercerized and entered at the invoice weights. Duty was levied ad valorem on the basis of the weights stated in the entry. Importers showed the true weights and that mercerization caused yarn to lose weight. Duty should have been levied on the basis of the true weights and not those stated in the entry.

[Reversed.]

*Allan R. Brown* for appellants.

*William W. Hoppin,* Assistant Attorney General (*Bernard Hahn* and *Samuel Isenschmid,* special attorneys, of counsel), for the United States.

[Oral argument April 26, 1922, by Mr. Brown and Mr. Isenschmid.]

Before SMITH, BARBER, and MARTIN, Associate Judges; DE VRIES, Presiding Judge, participating in the decision by agreement of counsel.

MARTIN, Judge, delivered the opinion of the court:

The importations which gave rise to the present question consisted of two bales of mercerized cotton yarn.

The bales were invoiced by weight, to wit, 600 pounds each, and at a stated unit price per pound. They were entered for duty at the same weight as that stated in the invoice, but in the entry the importers made certain additions per pound to the price given in the invoice, in order to raise it to the actual market value of the merchandise.

Thereupon the collector classified the yarn for duty under paragraph 250 of the tariff act of 1913. That paragraph imposes certain ad valorem rates of duty upon such yarns, graduated according to the numbers thereof. Accordingly the amount of the assessment was ascertained by applying the proper ad valorem rate of duty to the dutiable valuation of the merchandise, and as a necessary preliminary the amount of the dutiable valuation was ascertained by multiplying the stated weight of the bales, to wit, 600 pounds each, by the unit value per pound of the yarn as stated in the entry.

The importers thereupon protested against the assessment, claiming that immediately upon the receipt of the bales they had weighed

[1] T. D. 39128

them and had found their actual weignts to be 580 and 588. pounds, respectively, instead of 600 pounds each as stated in the invoice and entry. They claimed that the correct weights as found by them should be taken as the basis for computing the dutiable valuation of the merchandise, instead of the incorrect weights given in the invoice and entry. The importers did not dispute the correctness of the ad valorem rate of duty adopted and applied by the collector, their contention being limited to the question of weights alone.

The protest was submitted to the board and was overruled. In the course of the board's decision it was said—

The principle of law is well settled that the landed weights shown by the report of the Government weigher should be adopted in the assessment of duty, but that, of course, only applies when the weight in some measure controls the rate or amount of duty. We are unable to see how that principle in any way applies to this case, as under paragraph 250, and there is no question that that is the paragraph of the law under which the merchandise is dutiable, the duty is an ad valorem one pure and simple, and the collector has correctly applied it.

We think that in the present instance the weight of the merchandise in fact did in some measure control the amount of duty, since it controlled the dutiable valuation upon which the ad valorem rate of duty was calculated or applied. That is to say, the dutiable valuation of the merchandise was predicated upon two units, namely, the number of pounds of yarn in the bales and the price or value thereof per pound. If either of these two units in the calculation were excessive it would follow, of course, that the dutiable valuation would be excessive, and consequently that the amount of the assessment itself would be excessive.

The Government does not seriously deny the assertion that the designated bales, when landed, weighed only 580 and 588 pounds, respectively, instead of 600 pounds each, as stated in the invoice and entry. It appears that the bales when first purchased in England by the importers contained 600 pounds each of gray cotton yarn; also that upon the importers' orders they were sent elsewhere by the vendors to be mercerized; and that the yarn in the bales lost in weight by reason of that operation. Nevertheless, when the bales were invoiced for exportation to this country, the original weights thereof before the mercerization of the yarn were given in the invoice instead of the reduced ones. This procedure, it appears, followed the usual custom of the trade, although in this country the merchandise is dealt in upon the basis of its mercerized weight. And when the importers came to enter the merchandise for duty they gave the weights as stated in the invoice, but nevertheless made such additions to the unit price thereon as were in their opinion sufficient to raise it to the actual market value of the mercerized yarn. The price per pound as thus entered by the importers was in due course approved by the local appraiser.

When, however, the bales were delivered to the importers and were weighed by them the shrinkage in weight was ascertained, and the protest was thereupon filed.  The extent of the shrinkage in weight at the time of importation was proven without contradiction by the testimony taken before the board.  Furthermore the appraiser in his answer to the protest stated, "That tests made at various times show that cotton yarns when mercerized lose from 2 to 3 per cent in weight.  The invoice weights represent the weight of the yarn in the gray condition and not in the finished condition as imported. The weight in the finished condition is the dutiable weight."

In the Government's brief it is claimed with reference to the importation that "the value is dependent on the price per pound, and the importer's declaration on entry covers the foreign market value of the original yarn weight in the gray.  It represents also the foreign market values of the landed cotton, although the total invoiced weight or quantity was diminished by the mercerization process.  The gray original weight per bundle would be 10 pounds; in a mercerized condition, as imported, the yarn would weigh 9.7 and 9.8 pounds per bundle.  The value for duty purposes was found by multiplying the entered or appraised unit price per pound by 10, and not by 9.7 and 9.8."

However, it clearly appears from the record that the entered value of the yarn per pound did not represent its value in the gray but in its mercerized condition at the time of importation.  And this, of course, was the correct procedure, for it was the duty of the importers when stating in the entry the value per pound of the yarn to give its value in its condition when imported and not in its condition before exportation to this country.  The dutiable valuation of the bales, therefore, should have been ascertained by multiplying the entered price per pound by the true number of pounds of yarn when landed.  This was not done by the collector, but in fact the value per pound of the mercerized yarn was multiplied by the weight in pounds of the yarn when in the gray.

It may be said in brief, therefore, that in the present transaction a correct ad valorem rate of duty was applied, but, nevertheless, an excessive amount of duty was exacted, since duty was taken upon an excessive gross valuation of the merchandise.  The valuation was excessive, as aforesaid, because it was found by taking an excessive unit of weight and multiplying it by the unit of price or value.  The only question, therefore, is whether the error was capable of correction under the law.

The Government contends that no relief can be afforded to the importers under the circumstances, inasmuch as in the entry they used the invoice weight of 600 pounds in figuring the gross dutiable valuation of the merchandise and the estimated duties thereon.  The Government contends that to permit a correction of the weights

after such an entry would violate the provision in paragraph I, Section III, act of 1913, reading in part as follows:

The duty shall not, however, be assessed in any case upon an amount less than the entered value, unless by direction of the Secretary of the Treasury  *  *  *.

This objection, however, finds an answer in the fact that the term "entered value," as used in the foregoing provision, signifies the unit of value and not the gross dutiable valuation given in the entry.   In this case the unit of value was the price of the yarn per pound as given in the entry and confirmed by the appraisement of the local appraiser, and accordingly no less a price per pound could be adopted in finding the dutiable valuation of the merchandise for assessment.   But that provision does not prevent the ascertainment of the correct landed weight of the merchandise, notwithstanding the statement of the invoice and entry, and the determination of the duty by multiplying the correct unit price per pound by the corrected number of pounds as so ascertained.   That operation, it is true, results in this case in lessening the dutiable valuation of the merchandise, with a consequent lessening of the amount of the assessed duty, nevertheless duty is not taken in such case upon less than the entered value of the importation within the purview of the statute.

This subject has been fully discussed by this court in several previous decisions, and we content ourselves with citing some of them, referring hereby also to the authorities cited in them, as follows: United States *v.* Bush & Co. (4 Ct. Cust. Appls. 519; T. D. 33938); s. c. (5 id. 127; T. D. 34187); United States *v.* Suzarte & Whitney (8 id. 99; T. D. 37219); United States *v.* Kuttroff (9 id. 239; T. D. 38204); and United States *v.* Woodward-Newhouse Co. (11 id. 284; T. D. 39100).

It may be observed furthermore that no injustice is done to the customs in the present case by the adoption of the foregoing principle, since the importers at entry made such additions to the invoice price of the merchandise as were sufficient in fact to raise it to the true market value thereof in its imported condition.   That is to say, the value so entered was the value per pound of the mercerized yarn. It follows therefore that the total dutiable valuation should be found by applying that value per pound to the number of pounds of mercerized yarn in the imported bales, rather than to the number of pounds of yarn in them in the gray before they were exported to this country.

We may observe also that it has been held repeatedly that the net weight of the goods actually imported must be taken as the basis of duties, irrespective of the weights given in the invoice.   The following authorities are cited in support of this view: T. D. 14858, G. A. 2541; T. D. 21525, G. A. 4529; Mariott *v.* Brune (9 How. 619); United States *v.* Southmayd (9 id. 637); Austin *v.* Peaslee (2 Fed. Cas. 235);

Weaver v. Saltonstall (38 Fed. 493); Fachri v. Magone (53 id. 789); In re McRath, T. D. 25767 (G. A. 5848); United States v. Nash (27 Fed. Cas. 75).

We conclude therefore that duty should have been assessed upon the basis of their actual net landed weights, to wit, 580 pounds for bale 583, entry No. 128385, and 588 pounds for bale 636, warehouse bond No. 45271, and accordingly that the protest to that effect should have been sustained by the board. The board's decision overruling the protest is therefore reversed, and the case is remanded. *Reversed.*