**No. 49670.**—Protest 54384–K of Moscahlades Bros., Inc. (New York).

KEEFE, Judge: This case involves the dutiable weight of 41 barrels of peppers packed in brine. At the trial the case was submitted upon the record and protest papers including the report of the assistant surveyor which was agreed between counsel to represent the true and correct facts.

From the record before us the facts appear as follows: The consular invoice and the shipper's specifications show that the gross weight for the 41 barrels was 6,300 okes; that the invoice tare, including the barrels and the brine, was 2,488 okes; and that the invoice net weight was 3,812 okes. The customs weigher weighed the merchandise at the pier and obtained a gross weight of 15,193 pounds, which is equal to 5,387 okes, apparently 913 okes less than the invoice gross quantity. There also appears on the customs weigher's return attached to the entry papers a notation stating that actual tare was impracticable and that "the difference between returned gross weight and invoice net weight, as noted, considered a fair allowance for tare." As appears from the following notation addressed to the surveyor, the foregoing quoted report by the weigher was questioned by the collector, to wit:

Please review 3,812 okes as net, noting importer's amendment on basis of 2,899 okes net. Note that invoice gross is 17,788 pounds as against your 15,193.

271

In reply to this appears the following: "Consider the Inv. net weight of 3,812 okes the correct net weight."

It appears from the entry papers therefore that the liquidator used the invoice net weight as the basis for the assessment of duties and in so doing he adopted the tare suggested by the weigher, that is, the difference between the gross weight and the invoice net weight. Such tare is less than the tare shown upon the invoice.

The plaintiff contends that the basis for levying proper duty upon the merchandise should be obtained by deducting the invoice tare from the gross weight reported by the United States weigher and multiplying the result, to wit, 2,899 okes, by the unit value. It is further contended that the liquidation is contrary to the provisions of articles 823 and 1369 of the Customs Regulations of 1937, citing and relying upon the cases of *General Dyestuff Corp.* v. *United States,* 5 Cust. Ct. 173, C. D. 394; *General Dyestuff Corp.* v. *United States,* 5 Cust. Ct. 388, Abstract 44698; and *Union Brokerage Co., Inc.,* v. *United States,* 27 C. C. P. A. 238, C. A. D. 92.

The Government contends that the plaintiff has failed to show the actual tare or that the collector's allowance for tare is erroneous, citing and relying upon *General Dyestuff Corp.* v. *United States,* 5 Cust. Ct. 173, C. D. 394.

Article 823 of the Customs Regulations of 1937 is not applicable to the situation here before us, and article 1369, as amended by T. D. 49543, provides so far as applicable here, as follows:

Art. 1369. Tare.—(a) The net weight of merchandise dutiable by net weight, or upon a value dependent on net weight, will be determined by deducting the invoice tare, schedule tare, or actual tare from the gross weight.

\* \* \* \* \* \* \*

(f) When it is impracticable to ascertain the actual tare, the weigher will state in his return what, in his judgment, constitutes a fair tare allowance.

From a consideration of the record before us and the regulations applicable to the situation arising herein we are of the opinion that the collector has liquidated the entry in accordance with the regulations. The Government weigher reported that it was impracticable to ascertain actual tare and stated what he considered a fair tare allowance, and that such allowance was in substantial agreement with other shipments of the same kind of merchandise. The case of *Union Brokerage Co., supra,* cited by the plaintiff, is not in point here. The question there concerned the amount of impurities found upon cattle and whether the regulations authorized the determination thereof by the weigher or whether the authority was vested in the collector to grant or deny allowance. In the two cases of *General Dyestuff Corporation, supra,* cited by the plaintiff, the Government weighers determined the gross weight of the imported products by actually weighing the same, and the net weight thereof by deducting the invoice tare from the gross weight so found. As the gross weight was greater than the gross weight appearing upon the invoices the importers there claimed that the invoice gross weight was the proper weight. In each of those cases the Government weigher found it impracticable to determine actual tare and adopted the invoice tare as a fair tare allowance. In C. D. 394, the importer was unable to establish the actual net weight of the merchandise or that the weights found by the Government weighers were erroneous. In Abstract 44,698, however, the evidence submitted was found by the court sufficient to establish that the Government weigher's returns were erroneous. The instant case is distinguished from the two foregoing cases. Here all we have before us is the data before the collector. The plaintiff has failed to establish that the actual tare was not equal to the difference between the gross weight returned by the Government weigher and the invoice net weight. Nor has the plaintiff attempted to establish the actual net landed weight. From all that appears before us, 913 okes of brine might have

leaked from the 41 barrels. If such were the case, the peppers constituting the imported merchandise would still be intact and still be represented by the invoiced net quantity.

For the reasons stated we are unable to find any evidence sufficient to overcome the presumption of correctness of the collector's decision. Judgment will therefore be entered in favor of the Government.