(C. D. 1711)

GOLD HILL FOOD CORPORATION
W. J. BYRNES & CO., INC. } *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 23, 1955)

*Lawrence & Tuttle* (*George R. Tuttle* and *Charles F. Lawrence* of counsel) for the plaintiffs.

*Warren E. Burger*, Assistant Attorney General (*Samuel D. Spector, William J. Vitale*, and *Alfred A. Taylor, Jr.*, trial attorneys), for the defendant.

Before EKWALL and JOHNSON, Judges

JOHNSON, Judge: This case involves dried egg yolk imported from China on or about April 27, 1950, assessed with duty at 17 cents per pound under paragraph 713 of the Tariff Act of 1930, as modified by the General Agreement on Tariffs and Trade, T. D. 51802, and the President's proclamation of May 4, 1948, T. D. 51909. The classification of the merchandise is not involved, but it is claimed that duty was assessed on too great a quantity and that the invoice weights are correct.

The merchandise was shipped in 4 lots, the first 3 of which comprised 112 cases each, and the last of which comprised 224 cases. The weights at which the cases were invoiced, entered, and liquidated were as follows:

| Cases | Invoiced and entered weights | Liquidated weights |
|---|---|---|
| 1065–1176 | 27,693 pounds, gross | |
| | 22,400 pounds, net | 22,288 pounds, net. |
| 1583–1644 | 27,782 pounds, gross | |
| | 22,400 pounds, net | 22,736 pounds, net. |
| 1033–1144 | 28,325 pounds, gross | |
| | 22,400 pounds, net | 22,624 pounds, net. |
| 0729–0952 | 56,725 pounds, gross (invoiced) | |
| | 44,800 pounds, gross (entered) | |
| | 44,800 pounds, net | 45,284 pounds, net. |

The merchandise was thus assessed with duty on 896 pounds more than the invoiced quantity, resulting in an increase in duty of $152.32.

At the trial, plaintiffs called Henry De Gange, customs inspector at the port of San Francisco, who described the method by which he had determined the weight of the merchandise, as follows: He weighed 5 cases in the first lot, 5 cases in the second lot, 6 cases in the third lot, and 7 cases in the last lot, ascertaining the gross weight of each case. He then estimated the tare by judging the size of the case and the type of lumber used. The net weight of the entire importation was found by applying the average weight of the cases weighed and the estimated tare to all of the cases. The witness testified that he had been doing this type of work for nearly 17 years and that he had previously examined articles of this kind and estimated tare in the same way.

There was received in evidence as exhibit 1 Inspector De Gange's report showing the weights obtained, the tare used, and the mathematical computation by which the weight of the entire shipment was found. The average weight per case of the first lot was found to be 249 pounds; of the second, 253 pounds; of the third, 252 pounds; and of the fourth, 254 pounds. The tare was estimated at 50 pounds per case in the first three lots and 52 pounds per case in the last lot. The report also states:

1—TIN IN EA C/S ACTUAL TARE NOT OBTAINABLE

At the conclusion of Inspector De Gange's testimony, the case was transferred to New York. At the hearing there, counsel for the plaintiffs stated:

The witness here is from the importing company. The merchandise was not weighed by the importer, or any of its representatives, either in San Francisco or in New York, where it came for distribution. We will rely on the invoiced weights.

Mrs. Rhoda Seymour, called as a witness for the plaintiffs, testified that she is vice president of the importing firm and that she personally bought this merchandise and sold a portion of it. She had partially checked the office records in regard to the importation, but she did not have enough records in New York to cover the entire shipment since most of the firm's records go to its plant in Nashville, and most of this type of merchandise is sold from the dock in San Francisco or New York. According to the witness, this merchandise is bought and sold on the basis of a 200-pound net weight per case. As to the manner of packing, she testified:

A. It is packed in—there are 2 hermetically-sealed tins, and outside they have a wooden case that covers it. The merchandise is all in, there are hundred pounds each—2 tins in each case.

Q. What do you mean, there are hundred-pound tins?—A. Each case. Oh, no, I am sorry. I am trying to recall. Some of them were 2, and some of them were

Plaintiffs contend that it was illegal and improper for the Government to use average weights as a basis for the assessment of duty herein, on the ground that the weights of the cases were not uniform and that there were two tins in some cases and one tin in others. It is claimed, therefore, that the invoice net weights should be adopted and the protest sustained.

The rule is that the weight or quantity of merchandise actually imported must be taken as the basis for determining duties, irrespective of the quantity or weight given in the invoice. *Gertzen & Co.* v. *United States*, 12 Ct. Cust. Appls. 499, T. D. 40697; *Downing & Co.* v. *United States*, 11 Ct. Cust. Appls. 310, T. D. 39128. The method of ascertaining the weight of merchandise and the weights officially determined by customs officials are presumed to be correct, and the burden is upon the importer to rebut this presumption by presenting evidence to the contrary. *United States* v. *Gage Bros.*, 1 Ct. Cust. Appls. 439, T. D. 31503; *Draper & Co., Inc.* v. *United States*, 28 Cust. Ct. 136, C. D. 1400; *Resolute Paper Products Corp.* v. *United States*, 31 Cust Ct. 285, Abstract 57595.

In the instant case, plaintiffs have produced no testimony showing the actual landed weight of the merchandise but rely upon the claim that the method used by the Government was incorrect and that, therefore, the invoice weights must be used.

In support of their position, plaintiffs have cited a number of cases. In *Sears, Roebuck & Co.* v. *United States*, 3 Ct. Cust. Appls. 447, T. D. 33035, it appeared that the examiner had weighed a single piece of goods from one of two cases and had computed the weight of the entire shipment upon the assumption that each piece was the same. Evidence was presented to show that the shipment included pieces of different colors which varied in weight. The record also showed that the importers had weighed two pieces of each color and that a computation based on such weights resulted in a figure substantially equal to the invoice weight. The court sustained the protest and ordered reliquidation on the basis of the invoice weight, stating (p. 449):

It should be noted, however, that the record is very uncertain concerning one fact which the importers should have distinctly proven as part of their case, and that is the exact number of pieces severally composing the different colors of the importation. * * * The importers proceeded upon the assumption that the entire importation was equally divided into the five several colors; they therefore weighed ten pieces, two of each color, and cited the result as conclusive in support of the invoice weight. This should have been supplemented by direct proof of the number of pieces of each color contained in the importation. * * *

But, nevertheless, it fairly appears from the record that the invoice weight should control in the case. It is true that the presumption favors the correctness of the examiner's report; but that presumption is not conclusive, and it is effectually rebutted by the evidence in the case. This leaves the statement contained

in the official invoice, together with the corroboration furnished by the importers' weights, as the only authority remaining in the case upon the subject. And again, it seems to be implied by the questions put to witness, Abel Cole, and by his answers, that the importation was in fact composed equally of the five several colors. And this implication, vague as it undoubtedly is, was probably understood and accepted by the Government at the hearing, for no cross-examination was directed to that aspect of the case.

It is clear from the above quotation that the court accepted the invoice weight in that case because it was corroborated by the importers' weights. Although the court thought the importers should have proven the exact number of pieces of each color, there was an implication, apparently accepted by the Government, that the importation was composed equally of the several colors.

In the instant case, there is no corroboration of the invoice weights. In fact, no one, other than the inspector, weighed any of the merchandise. There is testimony that some of the cases contained 2 tins and some 1 tin, but there is no evidence of the number in each category. On the contrary, the inspector stated in his report that the cases contained one tin. The situation here is not analogous to that involved in *Sears, Roebuck & Co.* v. *United States, supra.*

The other cases cited by plaintiffs also involve differing circumstances. In *Kraft Phenix Cheese Co.* v. *United States,* 65 Treas. Dec. 1189, Abstract 26485, two types of cheese invoiced at different unit prices were weighed together, and the court held that the weight found by the surveyor was not valid for use by the collector in ascertaining duty, because the collector would be unable to determine the net weight applicable to each type. In *Livingston Fancy Food Products Co., Inc.* v. *United States,* 65 Treas. Dec. 1337, Abstract 27214, the court held that, under the statute there involved, the weight of each package had to be determined separately. In *Sun Trading Co.* v. *United States,* 3 Cust. Ct. 312, C. D. 265, the court sustained the weights determined by customs officials by deducting the invoice tare from gross weights obtained by weighing all the cases. The court found that the adoption of the invoice tare was acceptable where the importer weighed 1 case out of 300 cases, and the only fact shown relative to the other 299 cases was that they looked to be the same. It was held that, under those circumstances, the presumption of correctness attaching to the collector's action had not been overcome.

In the recent case of *Pastene & Co., Inc.* v. *United States,* 34 Cust. Ct. 52, C. D. 1677, we held that the weights shown by the United States weigher's return should prevail over other weights used by the collector, where the latter were not shown to be more accurate or obtained by actual weighing. The evidence established that the Government weigher had taken test weights of the filled cases and

had estimated the tare on the basis of a visual examination and his previous experience in weighing that kind of merchandise. The court noted that, under the regulations then in effect, estimated tare was allowed where it was impracticable to ascertain the actual tare. These regulations were also in effect at the time of the instant importation (sec. 16.6 (e), Customs Regulations of 1943).

In *Atlas Converting Co.* v. *United States*, 26 Cust. Ct. 198, C. D. 1324, the Government weighers ascertained the net quantity of certain shipments of yarn, wound on cones and spools and packed in cartons, by weighing the outside packing and estimating the weight of such cones and spools from similar empty cones and spools, and by sub-tracting such tare from the gross weight of each carton. It appeared at the trial that the weights of the spools and cones were not uniform, and the importer contended that duty should be assessed upon the basis of the invoice weight of the yarn and that the invoice tare should be allowed. The court, however, found in favor of the Government, on the ground that the Government weighers acted within the scope of their general authority in obtaining the gross weights and in esti-mating the tare and that, since no evidence was presented to establish the net weight of the yarn or the weight of the tare at the time the merchandise was landed, the presumption of correctness in favor of the collector's action had not been overcome.

In the instant case also, we are of the opinion that the Government weigher acted within the scope of his authority in obtaining the gross and net weights of the merchandise and that, since there is no evi-dence of the actual landed weight of the merchandise, the presumption of correctness in favor of the collector's action has not been overcome.

The protest is overruled and judgment will be rendered in favor of the defendant.